IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 42234**

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| TERMINATION OF THE PARENTAL | ) | |
| RIGHTS OF JOHN DOE (2014-15), | ) | |
| -------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH & | ) | Boise, October 2014 Term |
| WELFARE, | ) | |
| | ) | 2014 Opinion No. 134 |
| Petitioner-Respondent, | ) | |
| | ) | Filed: December 18, 2014 |
| v. | ) | |
| | ) | Stephen Kenyon, Clerk |
| JOHN DOE (2014-15), | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Cathleen MacGregor Irby, Magistrate Judge.

The judgment of the magistrate court is affirmed.

Law Offices of Theresa A. Martin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

ON THE BRIEFS

HORTON, Justice.

This is an expedited appeal by John Doe (2014-15) ("Doe") from an order terminating his parental rights to two minor children on the grounds of neglect. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Doe and Jane Doe are the biological father and mother of two boys: B.D., born in 2008, and T.D., born in 2011. Doe and Jane Doe divorced in 2009. This appeal only relates to the termination of Doe's parental rights.[1]

Beginning July 12, 2012, the Idaho Department of Health and Welfare (the Department) began working with Doe to address continuing safety concerns for the children. These concerns

_____

[1] Jane Doe consented to the termination of her parental rights on May 2, 2014.

included lack of supervision, neglect, and physical abuse.[2] There were times when Doe did not know the whereabouts of the children, could not provide the names of occupants of his residence, and appeared to be under the influence of drugs. A service provider, Northwest Neurobehavioral, reported that B.D. had been missing counseling and speech therapy appointments. On November 19, 2012, Doe tested positive for methamphetamine.

On December 13, 2012, the Department commenced a child protection case. On December 14, 2012, following a shelter care hearing, the magistrate court entered an order placing the children in the temporary custody of the Department. On January 23, 2013, the magistrate court vested custody of the children in the Department following an adjudicatory hearing. The magistrate judge commended Doe for entering into treatment and explained that she was concerned that Doe needed additional time to recover from recent methamphetamine use.

On February 5, 2013, a case plan hearing was held and the magistrate judge modified the proposed case plan submitted by the Department. The case plan required Doe to: maintain a legitimate source of income; maintain safe and stable housing; resolve pending legal issues and refrain from illegal activity; attend anger management counseling; participate in counseling with his children; participate in visits with the children; supervise the children properly when they were in his care; engage in services to meet the children's developmental, emotional, physical, and medical needs; attend a parenting education class; provide information regarding previous psychological evaluations or participate in an updated evaluation; continue mental health and substance abuse treatment; and participate in random tests for drugs and alcohol.

On April 2, 2013, the magistrate court conducted a 60-day review hearing. There, Doe submitted to testing which showed recent methamphetamine use. Doe admitted to using methamphetamine the previous Friday. The magistrate judge explained to Doe that she was concerned that he was not engaging in his case plan, placing particular emphasis on the need for him to maintain sobriety and to engage in programming to address his substance abuse and anger management issues. The foster parents, who are also the children's paternal grandparents, appeared at the hearing and reported the children were making developmental progress but were

---

[2] Nothing in the record conclusively shows Doe physically abused his children, but there were instances when the Department received referrals to investigate potential physical abuse. On one occasion, B.D. had bruising on his right temple which Doe was unable to explain. There were also concerns about domestic violence between Doe and Jane Doe, including an incident on September, 17, 2012, when Jane Doe was arrested after an altercation with Doe.

2

agitated after parental visits. The children's guardian ad litem reported that the children were improving in foster care and that the "children appeared to be well cared for."

On May 29, 2013, a six-month review hearing was held. The magistrate judge expressed her concerns over Doe's lack of effort to reunify with his children, his inability to communicate with the Department, and a recent psychological evaluation wherein Doe admitted continued use and the sale of methamphetamine. The evaluating psychologist recommended that Doe: (1) continue substance abuse treatment; (2) continue psychiatric care and medication; (3) obtain counseling for depression and relating to Doe's unhealthy relationship with his ex-wife; (4) participate in anger management training if other interventions did not address Doe's problems; and (5) obtain further parenting education.

On July 25, 2013, the magistrate court held a 60-day review hearing. The magistrate judge found Doe was doing well in his visits with his children but still had issues with substance abuse and following through with treatment, telling him that "[t]he sad part about this is you do well in visits and the[] children enjoy visits. It is really just [dealing with] your substance abuse." After the hearing, Doe's housing situation deteriorated. Doe had not had steady employment since January of 2012. In the fall of 2013, after Doe became unemployed, he was evicted due to non-payment of rent. This led to a period of homelessness where he lived on the street, in a van, or in a car.

On December 10, 2013, the magistrate court continued a permanency hearing to January 6, 2014, due to Doe's absence. After Doe failed to appear for the continued hearing, on January 28, 2014, the magistrate court entered an order adopting a permanency plan calling for termination of Doe's parental rights and adoption and authorizing the Department to suspend reunification efforts.

On February 5, 2014, the Department filed a petition for termination of Doe's parental rights on the basis of neglect. On March 20, 2014, Doe was arrested and charged with felony possession of a controlled substance and two misdemeanors. The arrest and subsequent charges resulted in Doe's incarceration for the duration of the proceedings giving rise to this appeal.

The trial on the Department's petition occurred on May 2, 2014. On June 10, 2014, the magistrate court issued a memorandum decision setting forth its findings of fact and conclusions of law. The magistrate court determined that it was in the boys' best interests that Doe's parental rights be terminated for neglect. The same day, the magistrate court entered its judgment

3

terminating Doe's parental rights. Doe timely appealed to this Court pursuant to I.A.R. 11.1 and this appeal has proceeded under the expedited process set forth in I.A.R. 12.2.

## II. STANDARD OF REVIEW

> The grounds for terminating a parent-child relationship must be proved by clear and convincing evidence. Our review of factual findings is limited, and where the trial court has granted a petition terminating parental rights, that conclusion will not be disturbed on appeal so long as there is substantial competent evidence in the record to support the findings. Furthermore, in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.
>
> In our review, we are mindful that [t]he finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In a parental-termination case, this is immensely important. A cold record of the trial does not tell the whole story. An independent review by our court could not take into account the trial court's superior view of the entire situation.

*In re Doe*, 156 Idaho 103, 105–06, 320 P.3d 1262, 1264–65 (2014) (alteration in original) (internal quotations and citations omitted).

## III. ANALYSIS

The issues presented in this appeal are: (1) whether there was substantial and competent evidence that Doe neglected his children as defined in Idaho Code section 16-1602(28)(a); and (2) whether the magistrate court erred when it found termination of Doe's parental rights to be in the best interest of Doe's children. We address these issues in turn.

### A. The magistrate court's finding that Doe neglected his children was based on substantial and competent evidence.

"Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child." *In re Doe*, 156 Idaho at 110, 320 P.3d at 1269 (quoting *Idaho Dep't of Health & Welfare v. Doe II*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010)). Idaho Code section 16-2005 specifies enumerated grounds for termination of parental rights. Termination is only appropriate if both (1) an enumerated ground for termination exists and (2) termination is in the best interest of the child. *Id*. "One ground on which the parent-child relationship may be terminated is where 'the parent has neglected or abused the child.'" *Id*. (quoting I.C. § 16-2005(1)(b)). Idaho Code section 16-2002(3) defines "neglected," and provides:

(3) "Neglected" means:

4

(a) Conduct as defined in section 16-1602(28), Idaho Code; or

(b) The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:

(i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and

(ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

Idaho Code section 16-1602(28) defines "neglected," as:

"Neglected" means a child:

(a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . .

"Whether neglect has occurred is a question of fact to be established by clear and convincing evidence." *In re Doe*, 156 Idaho at 110, 320 P.3d at 1269. "Idaho's termination statute exists 'not merely to alleviate harm but to prevent it.' " *Id.* (quoting *In the Interest of Cheatwood*, 108 Idaho 218, 220, 697 P.2d 1232, 1234 (Ct. App.1985)).

Here, the magistrate court's decision was based only upon the definition of neglect found in Idaho Code section 16-1602(28)(a).[3] The magistrate court found that neglect had been proven by clear and convincing evidence in three respects:

[Doe] failed to properly address his substance abuse issues, which impair his ability to provide proper parental care and control; [Doe] failed to demonstrate the ability to provide a safe, stable and/or continuous residence for the children; and [Doe] failed to demonstrate the ability to provide consistently for the children's medical, educational, mental health, and or other daily needs.

On appeal, Doe asserts that the magistrate court's finding of neglect was not supported by substantial and competent evidence and that "the magistrate erred by ignoring or at least not discussing relevant evidence of [Doe's] conduct. . . ." We agree with Doe that the trial court is not free to ignore relevant evidence that has been admitted. *State, Dep't of Health & Welfare v. Doe*, 149 Idaho 409, 414, 234 P.3d 733, 738 (2010). However, I.R.C.P. 52 governs the requirement that trial courts make findings of fact and conclusions of law. When interpreting that rule, we have held that

---

[3] Although much of the magistrate court's decision is devoted to a discussion of Doe's failures to comply with his case plan, the Department did not allege neglect as defined by Idaho Code section 16-2002(3)(b). Accordingly, this opinion will focus on the grounds alleged in the Department's petition for termination of Doe's parental rights.

> the trial judge is not required to recite every piece of evidence and either adopt it or reject it, or to sort through and discuss the testimony of each witness. Furthermore, the trial court may disbelieve the testimony of witnesses without giving specific reasons for doing so, provided that the record supports the conclusion that the court made adequate credibility determinations.

*Browning v. Ringel*, 134 Idaho 6, 14, 995 P.2d 351, 359 (2000) (quoting *Moore's Federal Practice 3d*, § 52.15[2][b]). Instead, the trial court's decision must "fulfill the purpose of I.R.C.P. 52(a) which is 'to provide the appellate court with a clear understanding of the trial court's decision so that it may determine whether the trial court applied the proper law in reaching its ultimate judgment.' " *Id*. (quoting *The Highlands, Inc. v. Hosac*, 130 Idaho 67, 70, 936 P.2d 1309, 1312 (1997)). With this standard in mind, we consider the three grounds upon which the magistrate court made its finding of neglect.

1. <u>Doe's substance abuse issues and their impact upon his ability to provide proper parental care and control.</u>

There was significant evidence presented as to Doe's long-standing difficulties with substance abuse. He entered into a drug court program in 2006, which resulted in a charge of possession of methamphetamine being dismissed in 2008. Doe testified that he began using methamphetamine again in 2010. Throughout the course of his contact with Department representatives during the pendency of the child protection proceedings, Doe admitted the ongoing use of methamphetamine.

Doe testified about his participation in substance abuse treatment during the course of the child protection proceedings. Doe first started treatment with the Veterans Administration but he did not find the services to be effective. In the spring of 2013, Doe began outpatient treatment at the Easter Seals but he "didn't really like it that much." Doe then sought treatment in the summer of 2013 with Ascent, but indicated that was unsuccessful because his "follow through wasn't there." Doe testified he made plans to restart his Ascent treatment in March of 2014, but was arrested before he could start.

On appeal, Doe does not challenge the magistrate court's finding that his use of methamphetamine compromised his ability to provide proper parental care and control of the children. Rather, Doe points to the months leading up to the termination trial, contending that "there was no evidence presented to contradict [his] testimony that he had been free of illegal substances since December 2013." Doe's assertion is incorrect. The magistrate judge's findings of fact address a conversation between Doe and a Department social worker in January of 2014.

6

Doe asked why he was not permitted to transport the boys. The social worker replied that it was dangerous so long as Doe continued to use methamphetamine. Rather than denying continued use of the drug, Doe attempted to assure the social worker that methamphetamine affected him differently than others.

There was other evidence presented contradicting Doe's claim that he had last used methamphetamine in December of 2013. The social worker testified about meeting with Doe in April of 2014, when Doe claimed that his last use of methamphetamine had been "two or three months" earlier. The social worker was then asked whether he had requested Doe to submit to urinalyses. The social worker explained that he had not because "[p]retty much throughout the entirety of this case" that Doe had admitted to the continued use of methamphetamine. The social worker further testified that Doe was arrested on March 20, 2014, for possession of methamphetamine and had thereafter remained in custody through the time of the termination trial.

Based upon the foregoing, we find that there was substantial and competent evidence supporting the magistrate court's finding that Doe's continued use of methamphetamine resulted in his inability to provide proper parental care and control of the children.

2. Doe's inability to provide a safe, stable or continuous home for the children.

Doe asserts that there "was not clear and convincing evidence that [Doe] did not have the ability to provide a safe, stable, and/or continuous residence for the children." The evidence presented at trial showed that Doe was evicted from his residence in October 2013. Following his loss of a residence, Doe was unemployed and lived in a van. Although Doe testified that he had an address where he was living for a couple of weeks prior to his arrest in March 2014, he did not describe the circumstances of his living arrangements. Doe resided in the Ada County Jail from March 2014 through the time of trial. The magistrate court's finding that Doe was unable to provide a residence for the boys was supported by substantial, competent evidence.

3. Doe's inability to provide for the children's medical, educational, mental health, and other daily needs.

Doe was the children's primary caregiver. The exhibits admitted at trial demonstrate that the boys had significant mental health issues. At the time T.D. entered into foster care, he had significant behavioral problems. He would strike his head against objects when redirected or told "no." Although Doe was aware of such behavior, he did not identify it as a matter of concern.

T.D. was evaluated by the Infant and Toddler Program, which recommended 26 sessions of developmental therapy. Doe denied awareness of either the evaluation or the recommendations. Likewise, B.D. was diagnosed with significant behavioral disorders. "Intense Behavioral Intervention" services were recommended, along with parent/child interaction training. The services were terminated due to missed appointments. After initially denying being aware of these recommendations, Doe said that the services were terminated because of interference by a Department risk worker showing up frequently "looking for things wrong."

The record shows that Doe had "little to no involvement" with the boys during the pendency of the child protection proceedings. He was inconsistent in his visitation with the boys. He did not attend the children's appointments nor did he go to the boys' schools. The magistrate court concluded that Doe was unable to provide for the children's medical, educational and other needs, primarily due to his ongoing use of controlled substances. This finding is supported by substantial and competent evidence.

**B. Doe has failed to demonstrate that the magistrate court erred in finding that the termination of his parental rights was in the best interests of B.D. and T.D.**

The magistrate court found termination was in the children's best interest because: (1) Doe's bond with his children had diminished as he was not their caregiver for the better part of eighteen months; (2) Doe did not resolve the safety concerns that caused his children to be removed from his care; (3) Doe was facing felony charges and still continues to struggle with substance abuse issues; (4) Doe's children need a safe, stable home; (5) both the children's guardian ad litem and the Department case manager believed termination is in Doe's children's best interest; and (6) Doe failed to follow through with his case plan.

Doe argues that termination is not in his children's best interests because the children, especially B.D. who is older, are very bonded to Doe and, with few exceptions, the visits between Doe and his children went well.

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship." *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). "When considering the best interests of the child, a trial court may consider numerous factors." *Id.* For instance,

> [w]hen determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of child while in foster care,

8

the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*Id.* The best interest analysis takes into account the reality that children need "stability and certainty." *Id.* at 112, 320 P.3d at 1271.

Here, there is substantial and competent evidence to support the magistrate court's finding that termination was in the best interest of Doe's children. Every single factor mentioned in *In re Doe* supports the magistrate court's conclusion. First, Doe cannot provide his children with a stable and permanent home because he continues to use methamphetamine and consequently has been in and out of jail. The children have found a safe stable home in foster care with their paternal grandparents. Second, Doe has been unemployed for a significant length of time. Third, there is no evidence that Doe financially contributed to his children's care since they came into the care of the State. Fourth, the children's foster parents and guardian ad litem reported that the children have been well cared for in foster care and have made improvements. Fifth, over the course of two years, Doe has made very little effort to improve his situation. Sixth, Doe has recurring problems with the law as he was repeatedly arrested during the child protection proceedings and was in the Ada County Jail at the time of the termination trial. There is nothing in the record suggesting that Doe will be able to provide stability and certainty for his children.

As the magistrate court pointed out, Doe's bond with his children had diminished as he was not their care giver for the better part of eighteen months. The magistrate court received evidence from the children's guardian ad litem and the Department case manager that they believed termination was in B.D. and T.D.'s best interest.

This Court concludes that substantial and competent evidence supports the magistrate court's conclusion that termination of Doe's parental rights was in the best interests of Doe's children. Therefore, we affirm the magistrate court's judgment.

## IV. CONCLUSION

We affirm the magistrate court's judgment terminating Doe's parental rights to B.D. and T.D and award costs to the Department.

Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice Pro Tem WALTERS, **CONCUR**.