IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 44767

In the Interest of DOE CHILDREN, )
Children Under Eighteen (18) Years of Age. )
-------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH AND )
WELFARE, )
)
    Petitioner-Respondent, )
)
v. )
)
JOHN DOE (2017-4), )
)
    Respondent-Appellant. )

Boise, May 2017 Term

2017 Opinion No. 62

Filed: June 9, 2017

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate Judge.

Magistrate court judgment terminating parental rights, affirmed.

Ada County Public Defender's Office, Boise, for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

---

ON THE BRIEFS

BURDICK, Chief Justice.

John Doe (Doe) appeals the Ada County magistrate court's decision terminating his parental rights. The magistrate court terminated Doe's rights on the statutory basis of Idaho Code section 16-2005(1), namely, that Doe is incarcerated and is likely to remain incarcerated for a substantial period of time during his sons'(A.C. and S.C.) minority. The court also found termination was in the best interests of A.C. and S.C. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.C. and S.C. were taken into foster care on September 23, 2015, after police were called to the family home due to neglect of supervision. S.C., who was two at the time, was found wandering in the street. S.C. was not wearing a shirt, shoes, or socks, was wearing a dirty and full diaper, and had injuries on his face and head. This was not the first time S.C. had been found

1

wandering alone in the road. A.C., who was seven at the time, came looking for S.C. and told police that their mom was busy getting ready to go somewhere. Approximately thirty minutes later, mother came looking for S.C. and A.C. Following an attempt to speak to mother and a brief struggle, mother was arrested for Misdemeanor Injury to Child. Because of the imminent danger caused by mother's neglect and because Doe was incarcerated, the Department of Health and Welfare (Department) was given temporary legal custody of the children.

Approximately a year later, after making reasonable attempts for reunification, the Department filed a Petition for Termination of Parent-Child Relationship. A default termination hearing as to mother was held on November 17, 2016, and the court terminated mother's parental rights thereafter. On January 5, 2017, the court held Doe's termination hearing.

Doe's case manager at the Idaho Department of Correction (IDOC) testified that Doe's earliest possible release date was November 2018.[1] The case manager also testified that Doe had committed multiple rule violations, including testing positive for opiates, tattooing, and engaging in disrespectful behavior towards staff. Doe testified to having a significant bond with his children and his desire to retain his parental rights. He also testified to being a drug addict and that he recognized he would have to demonstrate he was stable and able to care for the children before he could regain custody of them.

Following the hearing, on January 30, 2017, the magistrate court issued its memorandum decision. In its decision, the court terminated Doe's parental rights, finding that the State "has proven by clear and convincing evidence that grounds exist to terminate the parental rights of [Doe] to the minor children, [A.C. and S.C.]." The court found grounds for termination because (1) Doe "has been incarcerated and is likely to remain so for a substantial period of time during the child's minority," I.C. 16-2005(1)(e); and (2) termination is in the best interests of the children. Doe appeals.

## II.    STANDARD OF REVIEW

The grounds for terminating parental rights must by proven by clear and convincing evidence. *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 474, 478, 235 P.3d 1195, 1199 (2010). Where the trial court has explicitly applied a clear and convincing standard, we do not reweigh the trial court's determination of whether the evidence was clear and convincing. *In re*

---

[1] Doe testified that he was pursuing an appeal to be given credit for time served in county jail, which if granted would move his parole eligibility date up to July 2018. However, there was no evidence presented to substantiate this claim, and Doe's IDOC record shows November 2018 as his earliest parole eligibility date.

*Doe (2015-03)*, 159 Idaho 192, 195, 358 P.3d 77, 80 (2015). Rather, we review whether the trial court's decision was supported by substantial and competent evidence. *Doe*, 149 Idaho at 478, 235 P.3d at 1199. "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *In re Doe (2015-03)*, 159 Idaho at 195, 358 P.3d at 80.

## III.    ANALYSIS

**A. The magistrate court's decision to terminate Doe's parental rights was based on substantial and competent evidence.**

In its statement of purpose, the Termination of Parent and Child Relationship Act states: "Implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved and that the issue of severing the parent and child relationship is of such vital importance as to require a judicial determination . . . ." I.C. § 16-2001(2). A judicial determination severing the parent-child relationship must include a finding upon clear and convincing evidence that "(1) at least one of the statutory justifications is present, and (2) termination is in the best interest of the child." *In re Doe (2015-03)*, 159 Idaho at 196, 358 P.3d at 81; *accord* I.C. § 16-2005(1).

Here, the magistrate court found by clear and convincing evidence that termination was justified on the statutory ground found in Idaho Code section 16-2005(1)(e), and that termination was in the best interest of the children. Doe asserts that the magistrate court erred in finding that his incarceration would likely be for a substantial portion of A.C. and S.C.'s minorities because he will be eligible for parole in just over a year. Doe also argues that termination is not in the best interests of his children.

1. <u>There is substantial and competent evidence to support the magistrate's finding that Doe was likely to be incarcerated for a substantial period of A.C. and S.C.'s minority.</u>

Under Idaho Code section 16-2005(1)(e), termination of parental rights is justified where "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." This requires two findings: (1) that the parent is incarcerated; and (2) that the incarceration will likely last "for a substantial period of time during the child's minority." I.C. § 16-2005(1)(e); *In Matter of Doe (2016-14)*, 161 Idaho 596, 602, 389 P.3d 141, 147 (2016). In determining whether the parent is "likely to remain incarcerated for a substantial period of time during the child's minority," the trial court "may consider factors including, but

3

not limited to: the age of the child; the relationship, if any, that has developed between the parent and the child; and the likely period of time the parent will remain incarcerated." *In re Doe (2014-26)*, 158 Idaho 548, 552, 348 P.3d 163, 167 (2015). In determining the likely period of time the parent will remain incarcerated the court must consider the expected duration of future incarceration, rather than the duration of past incarceration. *In Matter of Doe (2016-14)*, 161 Idaho at 389 P.3d at 147.

Here, the magistrate court considered the ages of the children, noting that at the time of termination A.C. was eight and S.C. was three. Given their young ages, the court noted that even if Doe is released at his earliest possible parole date in November 2018, he would still be unavailable to parent his boys for a substantial period "during a period of their lives crucial to their development." Furthermore, the court concluded that it is "probable [Doe] will be incarcerated well past November 2018." Doe is currently serving a sentence for three felony convictions. Those convictions are for grand theft by possession of stolen property, grand theft, and drug trafficking in methamphetamine. The sentence satisfaction dates for his three felony convictions are in 2025. Doe has a past criminal record that includes domestic battery, two violations of no contact order, and petit theft. During his first year and a half of incarceration, Doe has received three disciplinary reports (DORs). The first DOR was for communicating to have tobacco brought to state property and left for pick-up. Doe's second DOR was issued after he tested positive for opiates, specifically morphine, which Doe testified he obtained while in prison. This DOR was considered a "Class A" violation, meaning it posed a significant security risk to the prison, which resulted in Doe being remanded to the Closed Custody unit where he was not allowed to have visits with his children. His third DOR was issued after he tattooed his entire arm. In addition to his DORs, Doe has multiple "C-Notes," electronic entries in an inmate's file that reflect minor rule violations or "behavior that staff wants to keep an eye on." One such "C-Note" involved Doe engaging in disrespectful behavior towards prison staff.

Given Doe's criminal history and poor performance in prison, the magistrate court concluded that it is probable Doe "will remain incarcerated near to his 'top-out' date of 2025." This would put A.C. at seventeen years old and S.C. at twelve years old, which, as the magistrate court noted, would make Doe "unavailable for essentially the majority of his boys' childhood." Considering Doe's multiple rule violations and overall poor performance in prison, the magistrate court's finding that Doe will remain incarcerated near to his sentence satisfaction date

4

is supported by substantial and competent evidence. *See Idaho Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 840, 230 P.3d 442, 450 (Ct. App. 2010) (noting that the magistrate court did not err in finding Doe would remain incarcerated beyond the determinate term of her sentence based on, among other things, her prior performance on probation).

Therefore, considering the children's young ages and the fact that Doe—based on his poor performance in prison—is likely to remain incarcerated until his sentence satisfaction date of 2025, we conclude there was substantial and competent evidence to support the magistrate court's finding under Idaho Code 16-2005(1)(e) that Doe is "likely to remain incarcerated for a substantial period of time during the child's minority."

2. There is substantial and competent evidence to support the magistrate court's finding that termination was in the best interest of the children.

The magistrate court found that termination was in the best interests of Doe's children because: (1) Doe is incarcerated and the children need a parent right now; (2) even before incarceration, Doe did not provide his children with a stable housing environment; (3) Doe has a history of domestic violence and drug abuse that have not been addressed through counseling or therapy; (4) Doe has continued to have problems following rules while in prison; (5) the children need a foundation of emotional support based in stability and certainty; and (6) Doe is unlikely to provide such stability and certainty.

Doe argues that termination is not in his children's best interests because he has established a bond with his children, especially A.C., and the visits he has had with his children have gone well.

Once the court determines that a statutory ground for termination exists, the court must then consider whether it is in the best interests of the child to terminate the parent-child relationship. *In re Doe (2014-15)*, 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014). "When considering the best interests of the child, a trial court may consider numerous factors." *Id.* (internal citation and quotation marks omitted). For instance,

> [w]hen determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

5

*In re Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). "The best interest analysis takes into account the reality that children need 'stability and certainty.' " *In re Doe (2014-15)*, 157 Idaho at 772, 339 P.3d at 1176 (quoting *In re Doe (2013-15)*, 156 Idaho at 112, 320 P.3d at 1271). "Expert testimony is not required to establish that termination would be in the child's best interests." *In re Doe (2013-15)*, 156 Idaho at 111, 320 P.3d at1270.

Here, the magistrate's finding that termination was in the best interests of the children is supported by substantial and competent evidence. Doe cannot provide his children with a stable and permanent home because he is currently incarcerated and, as discussed above, is likely to remain so until 2025. Even before incarceration, Doe failed to provide a stable home environment by engaging in unlawful conduct, including domestic violence and drug use. Additionally, the children's guardian ad litem and social worker both reported that the children were thriving in foster care and have made improvements. A.C. is in counseling to address trauma caused in part by Doe's history of broken promises. Finally, Doe's recurring problems while in prison, which have included drug use, have made it difficult and at times even impossible for him to have contact with his children and have made it likely he will remain incarcerated until 2025. Both the guardian ad litem and the social worker testified that termination was in the best interests of the children because Doe has failed to provide safety, stability, and certainty.

While the magistrate court recognized Doe's "profound love for A.C. and S.C.," the court concluded that the children did not have the same "depth of bond" and that the bond was superficial in nature. The court based its conclusion on the fact that Doe had been incarcerated for more than half of S.C.'s life and that Doe has "subjected his sons to a home environment marked by housing instability, domestic violence, drug addiction and criminal activity." This conclusion is further supported by the fact that A.C., while having expressed excitement about visitation with Doe, has "stated his preference to continue to live with his foster parents." In short, there is nothing in the record that suggests Doe can currently provide stability and certainty for his children or that he will be able to do so in the future.

As the magistrate court pointed out, there is no question that Doe loves his children. However, his past and current actions have made it impossible for him to provide the day-to-day care that his children need. Accordingly, we conclude that substantial and competent evidence

6

supports the magistrate court's conclusion that termination of Doe's parental rights was in the best interests of his children. We affirm the magistrate court's judgment.

## IV.    CONCLUSION

We affirm the magistrate court's judgment terminating Doe's parental rights to A.C. and S.C.

Justices EISMANN, JONES, HORTON and BRODY, **CONCUR.**