**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 45884**

| | |
|---|---|
| In the Matter of: JANE DOE, ) <br> A Child Under Eighteen (18) Years of Age. ) <br> ----------------------------------------------------------- ) <br> IDAHO DEPARTMENT OF HEALTH AND ) <br> WELFARE, ) <br> ) <br>       Petitioner-Respondent, ) <br> ) <br> v. ) <br> ) <br> JOHN DOE (2018-17), ) <br> ) <br>       Respondent-Appellant. ) <br> _____ ) | Boise, August 2018 Term <br><br> Filed: September 7, 2018 <br><br> Karel A. Lehrman, Clerk |

Appeal from the Magistrate Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Ralph L. Savage, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed.</u>

Trent A. Grant, St. Anthony, for appellant.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

_____

**SUBMITTED ON THE BRIEFS**

BRODY, Justice.

      This is an expedited appeal from a magistrate court's order terminating John Doe's parental rights as to his minor child, J.G. We affirm the judgment of the magistrate court because there is substantial and competent evidence to support the magistrate court's determination that Doe will likely be incarcerated during a substantial period of time during J.G.'s minority and that termination is in the child's best interests.

## I. BACKGROUND

      John Doe is the biological father of minor child, J.G. J.G. was conceived in Oklahoma about a month before Doe began serving a thirty-five year prison sentence. J.G. was born in 2011

and is presently seven-years-old. Doe saw J.G. one time when she was less than twenty months old. Someone brought the child to the prison to see him.

J.G. and her mother moved to Idaho in approximately 2013. In August 2016, law enforcement removed J.G. and her half-brother from their mother's care and placed them in shelter care after determining they were in imminent danger. After an adjudicatory hearing, the magistrate court determined it was in the best interest of the children to vest legal custody in the Idaho Department of Health and Welfare. Eventually the Department and the guardian ad litem for J.G. recommended termination of Mother and Doe's parental rights. Doe's termination hearing took place on January 12 and 19, 2018. The magistrate court determined that Doe will likely be incarcerated for a substantial period of time during J.G.'s minority and that termination is in the child's best interest. The magistrate court entered a judgment terminating Doe's parental rights. Doe appealed. For the reasons that follow, we affirm.

## II. STANDARD OF REVIEW

Parents have a fundamental liberty interest in family autonomy and in maintaining a relationship with their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Idaho Dep't of Health & Welfare v. Doe (2015–01)*, 158 Idaho 764, 767, 351 P.3d 1222, 1225 (2015). Thus, a court must be provided clear and convincing evidence before it may terminate a parent's rights. "Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain." *Doe (2015–01)*, 158 Idaho at 767, 351 P.3d at 1225. This Court will not disturb a lower court's decision to terminate parental rights if substantial, competent evidence in the record supports the decision. *Id.* "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court must independently review the magistrate court record, but is required to draw all reasonable inferences in favor of the magistrate court's judgments since "the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties." *Id.*

## III. ANALYSIS

**A. Substantial and competent evidence supports the magistrate's finding that John Doe will likely remain incarcerated for a substantial period of J.G.'s minority.**

Doe admits that he is currently incarcerated. Doe argues, however, that the magistrate erred in determining that Doe was likely to remain incarcerated for a substantial period of time during J.G.'s minority. We reject Doe's argument.

Idaho Code section 16-2005(1) authorizes a court to grant an order terminating parental rights if it determines that it is in the best interest of the child, and one of five additional statutory grounds exists, including that "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." I.C. § 16-2005(1)(e). Though what constitutes a "substantial period of time" is undefined, a trial court "may consider factors including, but not limited to: the age of the child; the relationship, if any, that has developed between the parent and the child; and the likely period of time the parent will remain incarcerated." *In re Doe (2014-26)*, 158 Idaho 548, 552, 348 P.3d 163, 167 (2015). The court must consider the expected length of future incarceration, not the amount of time the parent has spent incarcerated in the past. *Idaho Dep't of Health & Welfare v. Doe (2017-4)*, 162 Idaho 266, 269, 396 P.3d 695, 698 (2017). Here, there is substantial and competent evidence to support the magistrate court's determination that Doe will likely remain incarcerated during a substantial period of time during J.G.'s minority.

In July 2010, the state of Oklahoma charged Doe with felony drug trafficking in cocaine base and felony possession of PCP with intent to distribute. Doe had previously served a seven-year sentence in California on a serious drug charge. Doe entered a formal written guilty plea, agreeing to a thirty-five year sentence on each count to be served concurrently. He began his period of incarceration on October 15, 2010, about a month after J.G. was conceived. He did not appeal his judgment of conviction.

Since his conviction, Doe has filed a wide array of claims for relief in Oklahoma. One of his initial efforts resulted in an amendment of the Plea of Guilty and Summary of Facts. The document was changed to show that the range of punishment for the trafficking count should have been fifteen years to life (the lower end of the possible punishment was reduced) and the range of punishment for the possession with intent to distribute count should have been four years to life (again, the lower end of the possible punishment was reduced). The fines also should have been suspended. Importantly here, the Oklahoma court did not change the original sentence of thirty-five years on each count to be served concurrently. Doe's other claims for relief have been unsuccessful. One court described one of his attempts at relief as "frivolous, vexatious and without merit."

Doe challenges the magistrate court's decision based primarily on his contention that the nature and length of his sentences are erroneous, and that he could be released at any time once

3

corrected. Doe admits, however, in the face of numerous fruitless challenges over the course of many years, that "[u]nfortunately, the Oklahoma plea agreement, judgment and sentencing documents do not reflect" an agreement with the prosecutor to amend the charges or his sentence. The magistrate court reasoned that it was not in a position to judge the merits of Doe's challenges to his sentence. Doe did not present legal authority to support the relief he sought and there was no opinion testimony in the record from a lawyer concerning the likelihood of success on the merits of a post-conviction relief motion. Ultimately, the magistrate concluded that the likelihood of Doe's early release is pure speculation. Doe testified that in the absence of post-conviction relief, he believed his parole date would be 2022. The magistrate concluded that this was the earliest Doe could possibly be released, which would place Doe behind bars for at least half of J.G.'s minority.

The magistrate court supported its decision to terminate parental rights with substantial and competent evidence throughout its March 2018 findings—evidence that Doe did not dispute. Rather, Doe "simply seek[s] to have this Court reweigh the evidence and reach a different conclusion than the trial court." *Doe (2015–01)*, 158 Idaho at 769, 351 P.3d at 1227. However, "[t]he trial court has broad discretion in deciding whether to terminate parental rights, and this Court does not reweigh the evidence." *Id.* Thus, we reject Doe's contentions that the magistrate erred in determining that he was likely to remain incarcerated for a substantial period of time during J.G.'s minority.

**B. Substantial and competent evidence supports the magistrate's finding that termination is in J.G.'s best interest.**

The magistrate's conclusion that termination was in the best interest of J.G. is likewise supported by substantial evidence. "Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship." *In re Doe (2014-15)*, 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014). A court may consider numerous factors when considering whether termination is the best interest of the child, including the stability and permanency of the home, parental employment, parental financial contribution while the child is in the State's custody, the child's improvement in foster care, parental efforts to improve his or her situation, and the biological parent's ongoing problems with the law. *In re Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). The magistrate court addressed many of these factors throughout its 32-page opinion.

The magistrate court heard testimony from the current foster father, foster mother, counselor, initial foster placement parent, the state's licensed social worker, the guardian ad litem, Doe, and his aunt and mother. Based on the testimony, the court noted J.G.'s improvement in foster care in a stable and safe home. The home is pre-adoptive, so she is unlikely to be further traumatized by another move. Additionally, J.G. is with her half-brother, to whom she has a significant connection and attachment that she would lose if Doe's parental rights are not terminated. The magistrate court also determined that J.G. has a significant need for the attention, consistency, and support she receives from her pre-adoptive family. Also, despite Doe's expressed love for J.G., he is unable to contribute meaningfully in a real and positive way toward her development.

Doe's challenge to the magistrate court's determination regarding J.G.'s best interests suffers the same defect as his challenge to the magistrate's incarceration determination: findings supported by substantial evidence are competent despite conflicting evidence, and this Court does not reweigh the same facts in the face of that substantial evidence simply to substitute its opinion for that of the trial court.

The Court thus determines that the magistrate court's decision that termination is in J.G.'s best interest is supported by substantial and competent evidence. Additionally, because this Court finds at least one statutory ground for termination—Doe's likelihood to remain incarcerated—we need not address the other grounds. *See In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991) ("[T]he statutory grounds for termination under I.C. § 16-2005 are independent and if any one or more of the grounds for termination are found, termination may be granted.").

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the magistrate court's decision to terminate Doe's parental rights to J.G.


Chief Justice BURDICK, and Justices HORTON, BEVAN, and STEGNER CONCUR.