**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47218**

| | |
|---|---|
| In the Matter of:<br>**John Doe I, John Doe II, and John Doe III,**<br>**Children Under Eighteen (18) Years of**<br>**Age.** | )<br>)<br>)<br>) |
| **STATE OF IDAHO, DEPARTMENT OF**<br>**HEALTH AND WELFARE,** | )<br>) **Filed:  December 2, 2019** |
| **Petitioner-Respondent,** | )<br>) **Karel A. Lehrman, Clerk** |
| **v.** | )<br>) **THIS IS AN UNPUBLISHED** |
| **JANE DOE (2019-20),** | ) **OPINION AND SHALL NOT**<br>) **BE CITED AS AUTHORITY** |
| **Respondent-Appellant.** | )<br>) |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael Lojek, Magistrate.

Judgment of termination of parental rights, <u>affirmed</u>.

Anthony Geddes, Ada County Public Defender; Joshua D. Mills, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother and Father are the biological parents of three minor children.  In December 2017, the police responded to a report of domestic violence between Mother and Father.  Father was at Mother's home in violation of a no-contact order related to a prior domestic dispute.  After the police were called, Mother and Father fled the premises together to avoid arrest, leaving the

1

children (ages two, four, and six at the time) unattended. Father was arrested and charged with violating the no-contact order. Mother was charged with misdemeanor injury to a child for leaving her children without supervision. The police declared the children to be in "imminent danger" and placed them in shelter care.

The Idaho Department of Health and Welfare (Department) filed a petition under the Child Protective Act, Idaho Code §§ 16-1601, *et seq.*, seeking temporary custody of the children, which the magistrate granted. Nevertheless, at the end of January 2018, the magistrate authorized Mother to have the children in her home for an extended home visit and also approved a case plan for her. The case plan set forth numerous tasks for Mother to perform, including to "ensure safe and appropriate housing for her children and not allow anyone to reside in the home, overnight or longer, without the prior approval of the Department"; "maintain regular contact with [the children] and demonstrate appropriate parenting skills and positive communication"; "participate in substance abuse screening and/or evaluation, follow recommended services and maintain sobriety [and] participate in urinary analyses"; "demonstrate her ability to meet her children's basic, physical, medical, mental health, and developmental needs"; "participate in [p]rotective parenting education [and] demonstrate her protective skills in her interactions with the children"; "explore her eligibility for services, including individual counseling and group treatment"; and "participate in a Department-approved mental health assessment and comply with any and all recommendations."

In July 2018, the Department terminated Mother's extended home visit and removed the children from her home after a Department social worker discovered that Mother's boyfriend had been staying at Mother's home without the Department's permission; the children had been exposed to domestic violence; and there had been indications that other individuals were frequenting Mother's home. Additionally, Mother had not been participating in urinalyses; had not completed a mental health evaluation; was dropped from the protective parenting classes because of her excessive absences; and was no longer attending her support group.

In November 2018, the Department reported that Mother had not progressed in her case plan since it had terminated her extended home visit. In February 2019, the Department filed a motion to amend the permanency plan to termination and adoption. The magistrate granted the motion, commenting that the case had been ongoing for fifteen months with little progress. Nevertheless, the magistrate gave Mother an additional three months to perform the case plan

2

tasks and scheduled a review hearing for May 2019 and a termination trial for June 2019. In March 2019, the Department filed a petition to terminate Mother's parental rights, alleging that Mother had neglected her children and that the children had been in the Department's legal custody for more than fifteen months.

At the May 2019 review hearing, Mother filed a motion to amend the permanency plan and to vacate the termination trial arguing she had completed her case plan in its entirety. The magistrate denied the motion, and the case proceeded to a termination trial. After an evidentiary hearing, the magistrate issued its findings of fact and conclusions of law terminating Mother's parental rights.

In support of its conclusion that Mother had neglected the children, the magistrate found Mother has failed to provide a safe and stable home for the children; has maintained only sporadic contact with the children and "struggled to pick up on cues from her children"; has not adequately addressed her substance abuse issues; has not adequately demonstrated her ability to meet the children's needs; has failed to demonstrate protective skills in her interactions with the children; has not adequately participated in available counseling services; and has failed to comply with the recommendations of her mental health assessment. Further, the magistrate found that "as of the date of the termination trial . . . the children had remained in the continuous or temporary legal custody of [the Department] for . . . nearly nineteen months." Based on these findings, the magistrate concluded that Mother had neglected the children under Idaho Code § 16-1602(31)(a) or, alternatively, under I.C. § 16-2002(3)(b) and that termination of Mother's parental rights is in the children's best interests. Mother timely appeals the magistrate's termination of her parental rights.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho

3

383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

A. **Substantial and Competent Evidence Supports the Magistrate's Conclusion of Neglect**

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

4

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case; the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months; and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Mother argues the magistrate lacked substantial and competent evidence to conclude Mother neglected the children.[1] Specifically, Mother challenges the magistrate's conclusion that Mother's "past conduct" is likely to determine her "future behavior." She claims this analysis ignores that at the time of trial she had "a safe and appropriate home"; "was continuing to address her substance abuse issues by participating in treatment"; was employed; and "was ready to parent."

Contrary to Mother's assertion, however, the magistrate properly considered Mother's past conduct in an effort to determine her likely future behavior. The Idaho Supreme Court has held that "a court may consider past character evidence in order to determine future behavior." *Doe v. Doe*, 162 Idaho 653, 658-59, 402 P.3d 1106, 1111-12 (2017). "[N]othing in the statutory definition of 'neglect' suggests that a child must suffer demonstrable harm before the parent-child relationship can be terminated." *In re Cheatwood*, 108 Idaho 218, 220, 697 P.2d 1232, 1234 (Ct. App. 1985). Accordingly, the magistrate did not err by considering Mother's "history of failing to put her children's needs ahead of her own"; her "history of illegal drug use and a pattern of [failing] to follow through with rehabilitative and educational plans and programs"; and Mother's other past conduct.

Furthermore, substantial and competent evidence supports the magistrate's conclusion of neglect under I.C. § 16-1602(31)(a). Among other things, the evidence shows Mother has not

---

[1] Mother does not identify which of the magistrate's alternative conclusions of neglect Mother challenges--its conclusion under I.C. § 16-1602(31)(a) or under I.C. § 16-2002(3)(b). We construe her argument, however, as challenging both.

provided a safe and stable home for the children contrary to Mother's assertion otherwise. For example, Mother admitted to allowing her boyfriend, her brother, and her brother's girlfriend to live in Mother's home without the Department's approval and also to having drug paraphernalia in her home. Mother continued to expose her children to domestic violence, requiring the Department to investigate physical abuse allegations regarding the youngest child. Father testified he believed drug users were frequenting Mother's home. Also, a Department caseworker noticed various different vehicles, including a fifth-wheel camper, parked outside Mother's home during the early morning hours suggesting other individuals may have been spending the night at Mother's home without the Department's approval. Further, the caseworker testified that, in the caseworker's opinion, Mother did not demonstrate the ability to consistently ensure safe and appropriate housing for the children.

The evidence also shows Mother failed to adequately address her substance abuse issues and to meaningfully participate in treatment, despite Mother's assertion to the contrary. During the pendency of this case, Mother attended only eighteen of forty-six group counseling sessions; attended only two of five individual counseling appointments; missed twenty-four of thirty-six uranalysis tests; and tested positive for methamphetamine.

In contrast, the evidence does not support Mother's assertion that she is gainfully employed. Mother testified at trial about her employment, including working at a retail store for approximately a month. At the time of trial, however, Mother had failed to provide the Department with verification of her employment for over a year. For this reason, the magistrate found the Department was unable to access Mother's ability to support her children.

The evidence also contradicts Mother's claim that she was "ready to parent." The purpose of requiring Mother to perform the case plan was to demonstrate that she was capable of parenting. The claim at trial that Mother was "ready to parent" is inadequate to overcome her failure to prove her ability to parent by actually performing her case plan tasks. Moreover, Mother relies on Father's testimony that she is "ready to parent," but Father also inconsistently testified Mother allowed drug users into her home and that Mother "used to be a really good Mother."

Based on Mother's failure to perform the case plan, the magistrate also concluded Mother neglected the children under I.C. § 16-2002(3)(b), which allows for termination of parental rights when a parent fails to comply with a case plan and the Department has had legal custody of the

6

children for fifteen of the most recent twenty-two months. *See* I.C. § 16-2002(3)(b)(i). Substantial and competent evidence supports the magistrate's conclusion that Mother neglected the children under I.C. § 16-2002(3)(b).

As the district court found, the Department had legal custody of the children for nearly nineteen of twenty-two months preceding the termination trial. Further, the evidence shows Mother failed to perform her case plan tasks. The magistrate acknowledged Mother's efforts to make progress on her case plan and to achieve sobriety and stability. It noted, however, that Mother's "best efforts to date resulted only in modest success and, more recently, some regression to addictive behavior and criminal thinking." Ultimately, the magistrate found Mother had failed to perform nearly every task identified in her case plan. Mother challenges only two such findings, arguing she has "a safe and appropriate home" and continues "to address her substance abuse issues by participating in treatment." As discussed above, however, substantial and competent evidence supports the magistrate's findings to the contrary. Accordingly, we hold the magistrate did not err by concluding Mother neglected the children under I.C. § 16-1602(31)(a) and under I.C. § 16-2002(3)(b).

**B. Substantial and Competent Evidence Supports the Magistrate's Conclusion That Termination Is in the Children's Best Interests**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Mother challenges the magistrate's conclusion that the termination of her parental rights is in the children's best interests. The magistrate concluded that the children needed "an end" to court proceedings, uncertainty, and a pattern of "removal, temporary reunification, visitation and disappointment." Further, the magistrate concluded that, even if the children were reunited with

Mother, "there is a very high likelihood that [the children] would soon be taken back into foster care *again*." Mother contends the magistrate's conclusion in this regard was "subjective" and not supported by objective evidence

To the contrary, the magistrate's best-interest analysis objectively considered the children's need for stability and certainty in their lives. *See Idaho Dep't of Health & Welfare v. Doe*, 162 Idaho 266, 270, 396 P.3d 695, 699 (2017) (noting best-interest analysis takes into account children's need for stability and certainty). Further, substantial and competent evidence supports the magistrate's conclusion that the termination of Mother's parental rights is in the children's best interests. This objective evidence includes, for example, Mother's failure to provide a safe and stable home for the children; her ongoing substance abuse problem; her failure to adequately address that problem; her unwillingness to follow through with counseling recommendations and rehabilitative programs; her failure to show consistent employment; her failure to show an ability to provide for the children's needs; and her inability to avoid criminal charges, as demonstrated by the fact that she was charged in February 2019 with disturbing the peace. Further, Mother's case manager testified that, in her opinion, the children's best interests would be served by terminating Mother's parental rights so the children could have "a permanent home [and] start to heal."

The magistrate did not, as Mother argues, "discount[] the love and bond" between Mother and the children. Rather, the magistrate specifically acknowledged Mother's love for the children: "The Court believes that [Mother] loves her children and it is clear that she wants to be reunited with them." However, "love does not always translate into the ability to discharge parental responsibilities." *In re Doe*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014). Mother's love for her children does not overcome the magistrate's conclusion, which is supported by substantial and competent evidence, that terminating Mother's parental rights is in her children's best interests.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate's decision to terminate Mother's parental rights on the basis of neglect and on the basis of the children's best interests. Accordingly, we affirm the order terminating Mother's parental rights.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

8