**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket 43152**

| | | |
|---|---|---|
| IN THE INTEREST OF:  JANE DOE I, | ) | |
| A CHILD UNDER EIGHTEEN YEARS | ) | |
| OF AGE. | ) | |
| ---------------------------------------------------------- | ) | |
| JANE DOE (2015-03), | ) | **Boise, August  2015 Term** |
| | ) | |
| Petitioner-Respondent, | ) | **2015 Opinion No. 95** |
| | ) | |
| v. | ) | **Filed: September 25, 2015** |
| | ) | |
| JOHN DOE, | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| Respondent-Appellant. | ) | |
| | ). | |

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Cathleen MacGregor-Irby, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

Alan E. Trimming, Ada County Public Defender, Boise, for appellant.

Manweiler, Breen, Ball & Davis, PLLC, Boise, for respondent.

———————————

J. JONES, Chief Justice

Father appeals the judgment of the magistrate court terminating his parental rights to Child. Mother brought a petition for termination of Father's parental rights. Following trial, the court granted Mother's petition, finding that termination was justified based on Father's prolonged incarceration and inability to discharge his parental responsibilities and was in Child's best interest. Father appealed, challenging the sufficiency of the evidence to support the magistrate court's determination of the issues.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

Mother and Father lived together in Oregon for approximately ten years leading up to 2011. They are the biological parents of Child, who was born in February 2006. The nature of

1

their relationship during the time they lived together is disputed. In her trial testimony, Mother described the relationship as "no relationship" because Father essentially forced her to remain in the relationship and would not allow her to contact her family, in addition to other methods of controlling her. She testified that Father drank excessively and was both mentally and physically abusive. Father's testimony portrayed the relationship as a consensual, loving relationship and he denied any kind of abuse.

When Child was born, Father was present and paid the hospital bills in cash. He also paid cash for subsequent pediatric care and immunizations. Father testified that he attended nearly all of these subsequent appointments. Mother testified that Father was verbally abusive to Child. She also stated that on one occasion when Child was an infant, Father became angry and snapped a towel in Child's face.

In April 2011, Mother was able to contact her stepfather, Everett Meeks, who had raised her from ages five to fifteen. Upon receiving the phone call, Meeks immediately drove to Oregon to pick up Mother. Prior to this phone call, Mother had not had contact with Meeks for approximately eleven years, and he was not aware Mother had a child. Mother and Child moved to Boise with Meeks. Mother also reached out to police in Oregon because she knew Father had outstanding arrest warrants. Father was arrested in May 2011 on his outstanding warrants and stayed in jail until October 2011. In January 2012, Father was arrested in Oregon for murder. According to the minutes of a status conference in the case at hand, it was alleged in the murder trial that the victim was someone Father believed to have helped Mother escape. Father was convicted of Murder, Unlawful Possession of Firearm,[1] and Unlawful Use of Weapon. For these convictions, Father was sentenced respectively to life in prison with twenty-five years fixed, two years to be served consecutive to the murder sentence, and two years to be served concurrent to the other sentences.

Father has been in state custody continuously since his arrest for murder in January 2012. He testified that after Mother and Child left, he tried to contact them every day and to find out where they were. Mother only remembers two times that Father tried to contact her since she moved to Boise—once through Facebook and once by letter. The letter was the more recent of these known attempts, being approximately two years prior to trial.

---

[1] With respect to this charge, the indictment in Father's criminal case alleged that he had previously been convicted of the felonies of Rape III and Delivery of a Controlled Substance to a Minor.

Mother testified that both she and Child took a while to warm up to Meeks and his family. Meeks testified that when he first picked up Mother and Child, Child was clinging to and hid behind Mother, Child was very scared, and Child wouldn't look him in the eye. However, they have since formed strong bonds. Mother testified that she has seen a remarkable change in Child since they left Father, that Child is doing very well in school, and that Child has a sibling-like closeness with one of Meeks' children. Mother obtained employment in October 2011 and has been employed continuously since that time, working multiple jobs during some periods. Mother also attended college, earning an associate's degree as a veterinary technician. At the time of trial, Mother planned to shortly take the Veterinary Technician National Exam, which would allow her to become certified in a number of specializations and would increase her earning ability. At the time of trial, Mother was receiving Medicaid insurance for Child but was paying all her other bills on her own. She also contributed to Meeks' utility bills, though she did not pay a set monthly rent in the traditional sense.

Mother testified that she lives in constant fear for herself and for Child as long as Father retains parental rights. Since they left, Child has not had any contact with Father. Child does not ever talk about or ask about Father. Mother testified that in the four years from the time they left Father to the time of trial, Child only asked about Father one time, early on. In Mother's view, any emotional bond there may have ever been between the two has likely ceased to exist. Mother does not want Child to visit Father in prison because she believes it is not a healthy environment for a child. Child was five years old when they left Father. Before Father is eligible for parole, Child will be in Child's thirties and Father will be in his late seventies.

Father testified that he has access to email, video chatting, and visiting hours, and he wants to have contact with Child in the future. He says that the visiting facility is very nice, the prison staff is friendly to children, and there are many inmates who retain positive relationships with their children through visitation. Father called his first cousin, Kate Kamerrer, as a witness at trial. She had never met Child, but she testified that she would be willing to facilitate visits between Child and Father.

Following trial, the magistrate court issued a memorandum decision and judgment that terminated Father's parental rights. Father timely appealed.

## II.
## ISSUE PRESENTED ON APPEAL

The only issue presented on appeal is whether there is substantial and competent evidence in the record to support the court's termination of Father's parental rights.

## III.
## STANDARD OF REVIEW

"In an action to terminate parental rights where a trial court has noted explicitly and applied a clear and convincing standard, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *In re Doe*, 157 Idaho 955, 958, 342 P.3d 667, 670 (2015). "Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court. On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010) (internal citation omitted). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *In re Doe*, 157 Idaho at 958, 342 P.3d at 670 (internal citations and quotation marks omitted).

## IV.
## ANALYSIS

One of the purposes of Title 16, Chapter 20 of the Idaho Code is to provide a method for the court to order involuntary termination of a parent and child relationship when warranted. I.C. § 16-2001(1)(a). However, "[i]mplicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved and that the issue of severing the parent and child relationship is of [] vital importance." I.C. § 16-2001(2). Under this statutory scheme, a parent may bring a petition for termination of the other parent's parental rights. I.C. § 16-2004(a). Involuntary termination of parental rights may be ordered if the court finds by clear and convincing evidence that (1) at least one of the statutory justifications is present, and (2) termination is in the best interest of the child. I.C. §§ 16-2005, 16-2009; *In re Doe*, 158 Idaho 548, 550, 348 P.3d 163, 165 (2015). In the case at hand, the magistrate court found by clear and convincing evidence that termination of parental rights was justified on two separate grounds, found in Idaho Code sections 16-2005(1)(d) and (1)(e). The court also found that termination of Father's parental rights was in Child's best interest. The issue presented here is whether there is substantial and competent evidence in the record to support the magistrate court's findings. Each ground in section 16-2005(1) is an independent basis for termination. *Doe v. Doe*, 148 Idaho

4

243, 246, 220 P.3d 1062, 1065 (2009). Thus, this Court will affirm if substantial and competent evidence supports the magistrate court's findings that either subsection (1)(d) or (1)(e) is satisfied and that termination is in the Child's best interest.

## A.     Idaho Code section 16-2005(1)(d).

Termination is statutorily justified where "[t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child." I.C. § 16-2005(1)(d); *In re Doe*, 158 Idaho at 551, 348 P.3d at 166. Father does not provide argument contesting the magistrate court's finding that he presently is not able to discharge his parental responsibilities and duties from prison.

With respect to the requirement of a prolonged inability to parent, the magistrate court concluded that it is likely that Father will remain incarcerated for twenty-four more years and that his inability to parent the child will therefore continue. In reaching this conclusion, the court relied on testimony and Father's judgment of conviction, reflecting that he would not be first eligible for parole until the year 2039, at which time Child will be in Child's thirties and Father will be in his late seventies. Father argues that he testified at trial that his criminal matter is being appealed and he believes his criminal convictions are likely to be overturned, at which point he would be ready and available to care for Child. But Father provides no authority suggesting that a court cannot find a person unable to parent for a prolonged period, when such finding is based on a conviction pending appeal. *But see In re Doe*, 158 Idaho at 551, 348 P.3d at 166 (where termination was justified solely upon a criminal conviction and that conviction was later vacated, termination order was not supported by the evidence). Nor did Father provide any evidence to the magistrate court regarding an appeal. Father cites to the trial transcript, claiming that he testified at trial that his criminal case was being appealed. That is not exactly true. Father's attorney at trial suggested that Father may have an appeal pending but instructed him not to say anything about it. Although Father now states that his criminal convictions are under appeal and that he is confident they will be overturned, he provides no citations to facts in the record or authority to support this argument.[2] Therefore, the magistrate court's finding that Father's prison

---

[2] Father's conviction was affirmed by the Oregon Court of Appeals, without opinion, on April 22, 2015.

sentence makes him unable to parent for a prolonged period is supported by substantial and competent evidence.

Additionally, the court did not rely solely on Father's conviction in concluding that he has a prolonged inability to parent Child. The court found the evidence to show that Father has a violent criminal past and a history of alcohol abuse. It found Mother's testimony credible when she testified that Father was abusive and violent to both Mother and Child throughout their time with him. Further, the court found that Father had a serious alcohol problem and drank excessively on a daily basis. The court also found credible Mother's testimony that, when they were living with Father, Child was afraid of him and would only go to him if forced. The magistrate court's finding that Father's inability to parent will continue for a prolonged period is amply supported in the record given his violent and controlling behavior and his alcohol abuse. These behaviors caused the relationships in this family to deteriorate, and they render Father unable to discharge his parental responsibilities regardless of his lengthy incarceration. There is no evidence to suggest that these behaviors would not continue for a prolonged period. The magistrate court's finding is thus supported by substantial and competent evidence.

Despite his argument to the contrary, Father's inability to parent will be injurious to Child's health, morals, or well-being. Father argues that Child does not know Father is incarcerated and has had no contact with Father since April 2011. Father states that Mother provided no basis for her testimony that Child visiting Father in prison would be detrimental to Child. He argues that the prison has an inviting and acceptable visiting environment for children. He further argues that, in determining the weight to afford the testimony regarding the Father-Child relationship, the court inappropriately emphasized how Child was functioning in Child's family circumstances at the time of trial. Finally, Father argues that his testimony and evidence show he was a good father and had a positive relationship with Child.

Father's arguments lack merit. The magistrate court found that Father is a convicted murderer who cannot parent or provide for Child in any meaningful way at any time during Child's minority because he will serve the next twenty-four years in prison. The court reasoned that Father's inability to parent Child because of his incarceration will be injurious to Child in that it deprives Child of the closure that comes from the termination of the parental rights of a violent, controlling Father. The prison accommodates visits of children to their parents in prison. But for Child and Father to have a relationship at this point, Child would have to travel several

hours to a prison facility with Kamerrer, a person Child has never met, to visit a violent and controlling Father, a convicted murderer, with whom Child has had no contact in over four years. This situation, caused by Father's incarceration and inability to parent, is certainly injurious to Child's health, morals, or well-being. Despite Father's claim that he was a good father with a strong bond with Child, it is the province of the trial court to weigh credibility of testimony. The court found Mother's testimony to be more credible. And Mother testified that Child was frightened of Father when they lived together and that any emotional bond there may have ever been between the two has likely ceased to exist at this point.

Because of Father's ongoing incarceration, his alcohol abuse, and his violent and controlling behaviors, he is unable to discharge his parental responsibilities for a prolonged period, and this inability to parent is injurious to Child. The magistrate court's finding that Idaho Code section 16-2005(1)(d) justified terminating Father's parental rights was therefore supported by substantial and competent evidence.

B.      Idaho Code section 16-2005(1)(e).

Termination is also statutorily justified where "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." I.C. § 16-2005(1)(e); *In re Doe*, 158 Idaho at 551, 348 P.3d at 166. The magistrate court found that Father will remain incarcerated for at least the next twenty-four years before becoming eligible for parole and that his incarceration would continue until beyond the time when Child turns eighteen. The magistrate court noted that this is a substantial period of time during Child's minority. The only argument Father makes on appeal with respect to this ground is largely the same as his argument that he does not have a prolonged inability to parent Child—that his criminal case is on appeal, that he is confident it will be overturned, and that parental termination is therefore not appropriately based on his incarceration, citing *In re Doe*, 158 Idaho at 551, 348 P.3d at 166. His arguments fail under this statutory ground as well.

In the context of this statute, "'incarceration' refers to someone who has been convicted of a crime and is serving a sentence of incarceration." *In re Doe*, *Id.* at 552, 348 P.3d at 167. In determining whether a parent will be incarcerated for a "substantial period" during the child's minority, "the court may consider factors including, but not limited to: the age of the child; the relationship, if any, that has developed between the parent and the child; and the likely period of time that the parent will remain incarcerated." *Id.*

7

Father has failed to provide evidence that his criminal case is on appeal, reason to believe his conviction will be overturned other than his conclusory opinion, and any authority that a pending appeal on a criminal matter precludes reliance on this statutory ground. Father's murder conviction has clearly put him within the definition of being "incarcerated." And the fact that Father's sentence requires him to remain incarcerated far beyond the year in which Child reaches the age of majority also makes it clear that he is likely to remain incarcerated throughout Child's minority, as required by the statute. The magistrate court's finding to this effect was supported by substantial and competent evidence.

**C.    Best interest of the child.**

The magistrate court found termination of Father's parental rights was in Child's best interest. Father argues this finding is in error because (1) there was no evidence that his incarceration or an ongoing relationship with Child would have an impact on Child's well-being, and (2) his attempts to make contact with Child were not given appropriate weight in the magistrate court's decision.

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. When considering the best interests of the child, a trial court may consider numerous factors." *In re Doe*, 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014) (internal citation and quotation marks omitted); I.C. § 16-2005(1). While there is no set list of factors a court must consider, some important considerations that apply here include: parent's history with substance abuse, whether the parent has provided financial support, the child's relationship with those currently caring for him or her and whether the child has improved under that care, the child's need for stability and certainty, and the parent's incarceration. *Idaho Dep't of Health and Welfare v. Doe*, 152 Idaho 797, 803, 275 P.3d 23, 29 (Ct. App. 2012); *In re Doe*, 157 Idaho at 772, 339 P.3d at 1176. When a case involves an incarcerated parent, the Court may consider the quality and extent of time spent with the child prior to incarceration, the nature of the offense leading to incarceration, charged or uncharged prior criminal behavior while in the home, previous incarcerations, the impact incarceration has had on the child, and the quality of efforts made by the parent to keep a meaningful relationship with the child. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho at 803, 275 P.3d at 29; *In re Doe*, 143 Idaho 343, 349, 144 P.3d 597, 603 (2006) (Burdick, J., dissenting).

8

Father argues that Child does not know he is in prison, so there is no evidence that his incarceration adversely impacts Child. He argues that although Mother opined that prison is not a healthy environment for Child to visit, she provided no evidence supporting this assertion. He further argues that the prison facility encourages visitation between inmates and their families, and that Kamerrer is willing to facilitate such visitation. Finally, Father argues that he has continually attempted to contact Child since Mother and Child left him and that the lack of success of these attempts is directly attributable to Mother's unwillingness to allow contact.

Father's arguments are weak. Even without evidence to directly show specifically how his incarceration has impacted Child, the strong weight of the evidence shows that termination is in Child's best interest. The magistrate court carefully analyzed the facts of this case in light of several important factors. It discussed the nature and circumstances of the offense leading to Father's incarceration. Father was convicted of murder, felon in possession of a firearm, and unlawful use of a weapon. These crimes are violent in nature, which supports Mother's testimony regarding Father's violent tendencies. Though not discussed in the magistrate court's decision, the record suggests that the person Father murdered was someone who Father believed helped Mother and Child escape. Additionally, the indictment accusing Father of being a felon in possession of a firearm alleged that Father had previously been convicted of the felonies Rape III and Delivery of a Controlled Substance to a Minor.

The court considered whether Father had demonstrated prior charged or uncharged criminal behavior in the home. It found credible Mother's testimony that she was constantly in fear of Father because he was violent to both her and Child. It also found credible Mother's testimony that Father threatened to run away with Child, and that Father drank excessively every day. Mother noted on appeal that Father did not dispute Mother's claims of Father's alcohol abuse. Although there is no evidence in the record as to whether criminal charges were ever brought for much of this conduct, it could certainly be considered criminal behavior. The court considered evidence of Father's prior incarcerations. Mother testified that Father was on felony probation and that he had outstanding warrants for his arrest. Father also testified that he had warrants outstanding for his arrest. And, as stated above, in order to be convicted of being a felon in possession of a firearm, it was shown that Father had committed at least two prior felonies.

As for the quality of efforts by Father to maintain meaningful contact with Child, the evidence was disputed. Mother testified that, while she did not attempt to stay in contact with

9

Father, he contacted her two times in the four years since they left him, once by Facebook and once by letter. The letter was the more recent contact, that being approximately two years prior to trial. Although Father testified that he tried nearly every day to contact Mother and Child, there is no other evidence in the record to support any of these attempts. It is unclear how Father could have been successful in making contact through Facebook and by letter twice but never again in four years. Overall, the court found Mother's testimony at trial more credible than Father's. Although Father argues on appeal that he made ongoing efforts to have contact with Child, the weight of the evidence shows that he made minimal efforts to stay involved in Child's life.

Finally, Father's removal from Child's life appears to have had a profoundly positive influence on Child's well-being. Child no longer has to live in fear; Child is in a loving and supportive family environment; and Child is doing well in school and the community. As the court states, Father is not in a position to protect, care for, or support Child's needs and will not be in such a position at any time during Child's minority. Any continued relationship between Father and Child will likely be more harmful than positive to Child at this point. Therefore, the magistrate court's finding that termination of Father's parental rights is in Child's best interest is supported by substantial and competent evidence.

**D.    Attorney Fees on Appeal.**

Mother seeks attorney fees on appeal pursuant to Idaho Code section 12-121 and Idaho Appellate Rule 41. Father did not timely file a reply brief, and thus did not contest Mother's request for attorney fees. Mother asserts that Father's appeal is frivolous and does not present arguable issues of law, but she provides little argument or authority for this assertion. Under normal circumstances, attorney fees on appeal are only awarded pursuant to Idaho Code section 12-121 "when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). An appeal is brought without foundation where it merely asks the appellate court to reweigh the evidence. *Kelley v. Yadon*, 150 Idaho 334, 338, 247 P.3d 199, 203 (2011). Here, there was no basis in fact or law for this appeal. Thus, we award Mother her attorney fees on appeal.

**V.**
**CONCLUSION**

10

We affirm the judgment terminating Father's parental rights to Child and award costs and attorney fees to Mother.

Justices EISMANN, BURDICK, W. JONES and HORTON CONCUR.