**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48111**

| | | |
|---|---|---|
| **In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age.** | ) ) ) | |
| **STATE OF IDAHO, DEPARATMENT OF HEALTH AND WELFARE,** | ) ) ) | **Filed: September 22, 2020** |
| **Petitioner-Respondent,** | ) ) ) | **Melanie Gagnepain, Clerk** |
| **v.** | ) ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT** |
| **JANE DOE (2020-26),** | ) ) | **BE CITED AS AUTHORITY** |
| **Respondent-Appellant.** | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

David R. Martinez, Chief Bannock County Public Defender; Jessalyn R. Hopkin, Deputy Appellate Public Defender, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Jane Doe (2020-26) appeals from a judgment terminating her parental rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the mother of the minor child in this action, who was born in 2018.[1] Doe has a history of serious mental illness, resulting in multiple hospitalizations. During the underlying child

---

[1] The identity of the child's biological father is unknown. Doe was unmarried when the child was born and has not identified the child's father.

1

protection action, Doe obtained a psychological assessment that diagnosed her with five mental illnesses, including schizoaffective disorder. At the time of the termination hearing, Doe had stopped taking any medication for her mental illnesses without the approval of medical professionals.

Within months of the child's birth, police officers encountered Doe sleeping with the child on a couch in a mobile phone store. Doe was both uncooperative with the officers and "talking in circles." The officers became concerned with Doe's ability to care for the child, declared the child to be in imminent danger, and removed the child from Doe's care. The child was then placed into shelter care. After the adjudicatory hearing, the magistrate court took jurisdiction over the child. The child was initially returned to Doe's care under a court-ordered safety plan. Within weeks, however, the child was placed into the care of Doe's father after Doe overdosed on anxiety medication and was found unresponsive in her home with the child. The magistrate court subsequently vested the Department with legal custody of the child and approved a case plan for Doe.

Ultimately, the Department petitioned to terminate Doe's parental rights. Following a trial, the magistrate court terminated Doe's parental rights after finding clear and convincing evidence that she had both neglected and abandoned the child and that termination is in the child's best interests. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*,

143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe challenges the sufficiency of the evidence supporting the magistrate court's findings of neglect, of abandonment, and that termination is in the child's best interests. The Department argues that the magistrate court's termination decision is supported by substantial and competent evidence. We affirm the termination decision.

### A. Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(5) provides that abandonment occurs when the parent has willfully failed to maintain a normal parental relationship with the child, which includes, but is not limited to, reasonable support or regular personal contact. A parent's failure to maintain this relationship without just cause for a period of one year constitutes prima facie evidence of abandonment. *Id.* This timeframe is shortened to six months where termination is sought by a grandparent who is seeking to adopt the child. *Id.*

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 6-1602(31). Idaho Code Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected

3

when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found, by clear and convincing evidence, that Doe abandoned and neglected the child. There is ample evidence in the record to support both findings. As to abandonment, the magistrate court found, and the evidence showed, that Doe's visitation with the child had not progressed beyond supervised visitation since the child's removal. Further, Doe had not provided for the child's daily needs nor supported the child. Doe also did not comply with the requirements of her case plan.[2] After the filing of the underlying child protection action, the magistrate court approved a case plan for Doe which, among other things, required her to: (1) obtain a psychological evaluation; (2) comply with any of the evaluation's recommendations; (3) participate in individual counseling; and (4) complete a parenting course. Doe obtained the required psychological evaluation, which recommended that she attend individual counseling and a mental-health support group. During the termination hearing, Doe testified that she stopped going to individual counseling about a month prior, never participated in a mental health support group, and failed to complete the required parenting course. Doe's failure to fully comply with her case plan is relevant to a neglect finding under I.C. § 16-1602(31)(a). *See Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 504, 260 P.3d 1169, 1175 (2011) (holding that evidence of case plan noncompliance was relevant to a finding of neglect).

The magistrate court also found that Doe was unable to consistently manage her mental health disorders. According to the magistrate court's findings, Doe met with support personnel and sought

---

[2]    The magistrate court found that the child had been out of Doe's custody for seventeen months at the time of termination and that reunification was "farther away" than when the case began. Thus, Doe does not dispute that the Department had temporary or legal custody of the child for fifteen of the most recent twenty-two months or that reunification had not been accomplished by the last day of the fifteenth month in which the child had been in the Department's custody as required for a finding of neglect under I.C. § 16-2002(b)(i)-(ii).

proper medications at times, but then would withdraw from contact and discontinue prescribed medication at other times. Doe's caseworker and Doe's father testified that Doe had reported hearing voices or hallucinating. Doe's caseworker further testified that Doe had periods of mental stability during the child protection action, but that these periods usually did not exceed a month. Doe herself testified to multiple instances of inpatient treatment for mental health issues. Doe's psychological assessment corroborates this testimony. However, Doe disliked the evaluation's results (which diagnosed her with multiple mental illnesses) and began seeking another. By the time of the termination trial, Doe was no longer taking any medication to treat her mental health conditions.

In light of Doe's untreated mental health issues, the magistrate court found that Doe could not be expected to care for the child. Doe testified that she had no understanding of why the child was removed from her care and that she did not know if her apartment was safe for the child. When asked about the child's needs, Doe responded by saying that she did not know what the child's needs were. Testimony from Doe's caseworker corroborates Doe's testimony. Doe's caseworker testified that Doe failed to recognize safety hazards within her apartment, such as a broken mirror above the couch, an exposed vent the child could access, and improperly stored prescription medication. Doe's caseworker further testified that, when she asked Doe about the broken mirror, Doe did not recognize the threat it posed and stated that "she liked it."

Doe faults the magistrate court for failing to consider evidence that she managed her mental health issues and tended to the child's medical needs prior to the child protection case. Doe further contends that most of her visitations with the child were positive, but that the infrequency of the visits denied her the opportunity to demonstrate her parenting ability. As set forth above, the magistrate court recognized that Doe was able to manage her mental health issues at times, but that her inability to do so consistently put the child at risk. At the time of the termination hearing, Doe testified that she had stopped seeking mental health treatment because she did not think it was "going anywhere." Regarding the child's medical needs, Doe testified that, despite being notified of the child's wellness visits, she had not attended the child's doctor's appointments during the underlying child protection action. Regarding visitation, Doe's caseworker testified that Doe missed approximately one-third of her visits with the child, which resulted in a reduction of her visitation. Doe's visitation supervisor testified that Doe became disengaged during later visits, spending time distracted by electronic devices or just trying to occupy the child without any quality interaction. Although Doe complied with mental health treatment recommendations at times, which the magistrate court acknowledged, there was still

5

substantial and competent evidence to support the magistrate court's finding that Doe abandoned and neglected the child. Consequently, Doe has failed to show error in this finding.

**B.      Best Interests of the Child**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that it is in the child's best interests to terminate Doe's parental rights because the likelihood of reunification within the next year, if ever, was "extremely remote." Doe argues that the magistrate court erred because she obtained prenatal medical care while pregnant with the child, receives sufficient government benefits to provide for the child, had shown improvement in her mental health, and still had some bond with the child. Despite these positive factors, some of which the magistrate court expressly recognized, Doe does not allege that she can care for the child now or will be able to in the foreseeable future. Doe received additional time to demonstrate the ability to care for the child prior to termination, but failed to progress beyond supervised visitation. Doe's caseworker and the guardian ad litem both testified that Doe's untreated mental health disorders leave her unable to recognize and address the child's needs. Additionally, the child has been in the custody of Doe's father for all but two months of her life. The guardian ad litem testified that the child is thriving in the care of Doe's father, who also has custody of Doe's older child.[3] The child is bonded to her older sibling and Doe's father. Doe's

---

[3]      Doe's father testified that he has formal guardianship of Doe's other child, is seeking to terminate Doe's parental rights, and intends to retain custody of the child permanently.

visitation coordinator testified that the child began to cry during some later visits with Doe, suggesting that any bond the child shared with Doe had diminished or ceased. In sum, there is ample evidence supporting the magistrate court's finding that termination is in the child's best interests. Doe has failed to show error in this finding.

## IV.

## CONCLUSION

The magistrate court's findings that Doe abandoned and neglected the child and that termination is in the child's best interests are supported by substantial and competent evidence. Doe has failed to show error in the magistrate court's decision to termination her parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.