**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52493**

| | | |
|---|---|---|
| In the Matter of:  Jane Doe I and John Doe I, Children Under the Age of Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed:  June 18, 2025 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| JANE DOE (2024-53), | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Courtnie R. Tucker, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Jolene C. Maloney, Conflict Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Richard W. Roberts, Deputy Attorney General, Caldwell, for respondent.

---

GRATTON, Chief Judge

Jane Doe (2024-53) (Mother) appeals from the judgment of the magistrate court terminating her parental rights.  Mother argues the magistrate court erred by finding that Mother neglected Jane Doe I and John Doe I and that termination of Mother's rights is in the Children's best interests.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother's two minor children, Jane Doe I and John Doe I (collectively, Children) are the subject of the termination proceeding.[1]  Jane Doe I was born in May 2014, while John Doe I was

---

[1]     Mother also has a third child, however that child is not at issue in this case.

born in October 2017. Jane Doe I has a legally established father that is listed on her birth certificate. There is no legally established father for John Doe I.

In March 2021, the Idaho Department of Health and Welfare (Department) filed a petition for hearing under the Child Protective Act (CPA). The petition was filed after Mother violated a no-contact order for the third time. At the shelter care hearing, the magistrate court found jurisdiction and cause to keep Children in the care of the Department. In April 2021, the magistrate court held a contested adjudicatory hearing and placed Children in the legal custody of the Department.

In July 2022, the State filed a petition for termination. Ultimately, a four-day termination trial was held. At the conclusion of trial, the magistrate court terminated the rights of both Mother and Jane Doe I's father.[2] The magistrate court found that Mother had neglected Children by failing to comply with the court-ordered case plan within the time standards prescribed by Idaho statute; Mother did not demonstrate the ability to safely parent Children or meet their needs; Mother did not address her mental health and substance abuse issues; and Mother had incurred several new legal charges over the course of the three years she was attempting to work her case plan. The magistrate court also found that it is in Children's best interests for Mother's parental rights to be terminated. Mother appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a

---

[2]    Termination of Jane Doe I's father's parental rights is not an issue in this appeal.

2

parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Mother claims the magistrate court abused its discretion by terminating her parental rights. Mother challenges the sufficiency of the evidence supporting the magistrate court's findings that she neglected Children, and that termination of her parental rights is in Children's best interests. The Department responds that substantial and competent evidence supports the magistrate court's termination decision.

### A.     Neglect

Mother argues that the magistrate court's finding that she failed to complete a Department approved parenting course and demonstrate learned parenting skills is clearly erroneous. Mother asserts that the magistrate court's conclusion that she failed to complete her case plan is not supported by substantial and competent evidence because of the admitted lack of recordkeeping by the Department and because it is undisputed that she progressed to 48-hour visitations, which necessarily required case plan progress.

The magistrate court found that Mother "did not complete a Department approved parenting class or demonstrate appropriate parenting skills." Mother correctly points out that the

Department case worker testified that Mother had, in fact, completed a parenting class and demonstrated some parenting skills. While the magistrate court recognized that there were moments when Mother demonstrated parenting skills, the Department acknowledges that the magistrate court's finding is contrary to the record. However, as set forth below, in finding neglect, the magistrate court found that Mother also failed to complete a number of other case plan tasks.

Idaho Code § 16-2002(3) defines "neglect" as:

> (a) conduct defined in section 16-1602(31), Idaho Code; or (b) the parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and: (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

The magistrate court found that Mother failed to complete several case plan tasks: (1) Mother did not address her mental health and substance abuse issues; (2) Mother incurred several new legal charges over the course of the three years she had been attempting to work a case plan; (3) Mother was incarcerated at the time of the termination trial and did not have a safe and stable home to provide for Children; and (4) Mother never verified the ability to meet the financial needs of her family. Substantial and competent evidence in the record supports these findings.

Mother points to testimony from the case worker that the initial two case workers, assigned during the first two years of the CPA case to early 2023, failed to document communications and other information relevant to Mother's progress on case plan tasks. Mother contends the magistrate court drew erroneous conclusions about Mother failing to complete her case plan tasks because of these Department recordkeeping and communication errors. In support of her argument, Mother notes that the case worker testified that Mother progressed from unsupervised visits to overnight visits and then 48-hour visits in this first 24-month period. According to Mother, this demonstrates progress on her case plan, which was undocumented due to Department failures.

The lack of documentation in the first 24-month period does not establish that Mother completed all of her case plan tasks or that *she* provided required documentation. For example, Mother was required by the case plan to obtain a mental health evaluation, and may have done so in 2021, however there is no verification that Mother followed the recommendations of the evaluation and engaged in any mental health treatment. Likewise, Mother did obtain a substance abuse evaluation as required but never completed substance abuse treatment. Mother claimed she had done so, but the Department was unable to locate any records to confirm this, even though the

4

Department contacted the provider with whom Mother claimed to have seen to complete the treatment. As part of her case plan, Mother was required to provide releases of information to obtain medical records and information on treatment so that the Department could contact the providers Mother worked with for different treatment requirements. Even through these requests, the Department was unable to independently verify Mother's participation in these programs. Moreover, according to the case plan, conditions for case closure required Mother to provide the Department with certificates of completion for both the parenting course and a domestic violence risk assessment and recommendations; Mother failed to provide this information.

In addition, Mother failed to complete several of the case plan tasks after the first 24-month period. For example, the Department referred Mother for substance abuse treatment in 2023, but she was discharged for noncompliance. Mother repeatedly failed to submit to drug testing as requested, and when she did, she tested positive for methamphetamine and amphetamine. Mother did not provide financial support for Children; moved several times and failed to establish a safe and stable home for Children; failed to provide verification of stable and long-term employment; and incurred several criminal charges and convictions.

Finally, the magistrate court was aware of the Department's poor recordkeeping and worked with the parties to move the CPA case forward toward a goal of reunification. Mother, however, was unable to complete her case plan tasks as required to achieve this result. Mother argues that the termination of 48-hour visitation was because Mother failed to provide documentation that the Department should have already had. However, the Department ended the 48-hour visitation and resumed supervised visitation due to the Department's concerns about Mother's substance abuse, overall progress on the case plan, refusal to submit to a hair follicle test, and positive urinalysis. Then, as the magistrate court found:

> [i]n September 2023, [Appellant] took the children from a supervised visit at the Department and left without authorization. [She] was apprehended by law enforcement (with the children in her vehicle) and charged with Kidnapping. At the scene, [she] falsely insisted to the officer that the court had given her the authority to take the children. A no contact order was entered in the criminal case prohibiting [her] from having any contact with her children. [She] has not had contact with the children since September 2023.

In sum, the magistrate court found: Children have been in foster care for well over three years, and Mother never stabilized during the time Children were in foster care; Mother did not address her mental health and substance abuse issues; Mother continued to use controlled

5

substances and never demonstrated sustained sobriety; Mother incurred several new legal charges over the course of the three years she attempted to work a case plan, including charges for kidnapping the Children from a supervised visit with the Department; Mother did not have a safe and stable home to provide the children; and Mother never verified the ability to meet the financial needs of her family. Mother never overcame the safety issues that caused Children to be removed in the first instance. Substantial and competent evidence supports the magistrate court's finding that Mother failed to comply with the case plan; this failure supports a statutory basis for termination of Mother's parental rights.

## B.     Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho at 611, 818 P.2d at 315. When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Mother points to evidence in the transcript to the effect that Children may not be any better off in foster care than when they were taken into custody. Mother relies on testimony from the case worker who essentially agreed that Children are in substantially the same condition physically, mentally, and in their overall well-being as when first taken into custody. Nonetheless, based on the record as a whole, the magistrate court concluded that Children improved while in the care of their foster family and, in particular, emphasized Children's stability and well-being. Specifically, the magistrate court highlighted that Children need and deserve a safe, stable, and permanent home after being in foster care for an extended period waiting for Mother's situation to stabilize.

The magistrate court's ruling is properly focused on the stability of the home. The reason Children were brought into custody was Mother's violation of a no-contact order and unavailability

6

due to incarceration. As noted previously, Mother has a significant criminal record and has been in and out of incarceration numerous times during this case. Children's improvement while in foster care is a valid consideration; however, the magistrate court's best interests analysis turns on whether Mother is in a position to provide a safe and stable home environment. The magistrate court found that the Mother failed to build a relationship with Children and be present and supportive both physically and financially. The magistrate court stated that Mother demonstrated an inability to stabilize, often due to her periods of incarceration. The magistrate court further noted that Mother failed to address her substance abuse issues and that her behavior during the prolonged course of the CPA case was dysregulated and confusing. Mother was unable to demonstrate the ability to discharge her parental responsibilities and promote Children's safety and security.

Finally, Mother argues that the magistrate court erred by referencing that the initial foster family created a safe and stable home, met the needs of Children, and are a placement option ready, willing, and able to provide for Children. However, by the time of the fourth day of trial, Children had moved to fictive kin who is a teacher at the school. Other than to point out that the magistrate court incorrectly stated that the initial foster family was caring for and able to be a permanent placement for Children, Mother makes no argument how that error makes any difference in the best interests analysis. The magistrate court's decision to terminate the parental rights of Mother and determine whether it is in Children's best interests to stay with Mother was not predicated on the original foster family with whom Children were placed. Although the foster family meeting and providing for Children is a factor in the magistrate court's analysis, the magistrate court also makes clear that the basis for the best interests determination is due to Mother's neglect, failure to provide a stable and safe environment for Children, her continuing issues with substance abuse, and incarceration. The magistrate court's finding that termination is in Children's best interests is supported by substantial and competent evidence in the record.

## IV.
## CONCLUSION

The magistrate court's findings that Mother neglected Children, and that termination is in Children's best interests are supported by substantial and competent evidence. Accordingly, the magistrate court's judgment terminating Mother's parental rights is affirmed.

Chief Judge LORELLO and Judge TRIBE **CONCUR**.