# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 53297

| | | |
|---|---|---|
| In the Matter of John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | |
| Petitioner-Respondent, | ) ) ) | Filed: January 7, 2026<br>Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE and JOHN DOE (2025-39), | ) ) ) | BE CITED AS AUTHORITY |
| Respondents-Appellants. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Judgments terminating parental rights, <u>affirmed</u>.

Krista L. Howard, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jessica L. Partridge, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Jane Doe and John Doe (2025-39) appeal from the judgments terminating their parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2022, a four-year-old child was admitted to the hospital due to severe malnourishment. While hospitalized, the child rapidly gained weight and was discharged after a few days. In October, the child was hospitalized a second time for frequent vomiting and weight loss. The child underwent a scan which showed he had collections of cerebral spinal fluid that can

1

develop from trauma or other causes. The child was again able to gain weight during his stay at the hospital and was discharged. In November 2022, the child was hospitalized a third time for vomiting and a severe headache. The child underwent additional scans which showed acute bleeding in various areas of his brain and a rib fracture. The child was declared to be in imminent danger. The child was living with his aunt and uncle, who held themselves out to be his parents; however, a genetic test revealed there was no biological connection between the aunt and the child. The Idaho Department of Health and Welfare took custody of the child. The Department investigated and ultimately located Jane and John Doe, the child's biological parents, living in Afghanistan. After providing a copy of the child's Afghanistan birth certificate, Jane and John were added to this case.

During the Department's investigation and subsequent conversations with Jane and John, it was discovered that they had "given" the child to his aunt and uncle, who did not have children of their own. Afghanistan does not currently, and did not previously, have a legal process to adopt a child. However, Jane, John, the aunt, the uncle, and the child all continued to live in the same "family compound" in Afghanistan, with Jane and John still engaged in the child's daily life. In August 2021, the government in Afghanistan was overthrown by the Taliban. The family attempted to flee the country, but Jane and John were separated from the aunt and uncle during a bombing attack at the Kabul, Afghanistan airport. Jane and John lost consciousness, and when they awoke, they could not locate the child, aunt, or uncle. Jane and John were unable to board any of the planes leaving for the United States and ultimately returned to their home in Afghanistan. Eventually, the uncle was able to contact John and share that the uncle, aunt, and child had successfully boarded a plane taking refugees from Afghanistan to the United States. The uncle explained that the refugee resettlement program placed them in Boise, Idaho. From August 2021 to November 2022, Jane and John communicated with the uncle and the child on a weekly basis by phone and video calls.

After the Department took custody of the child, he was placed in foster care. During this time, the Department obtained a translator and attempted to explain to Jane and John the full extent of the abuse the child had suffered while living with the aunt and uncle. The Department reported that Jane and John showed little reaction to this information. The Department also had documentation describing the abuse translated to Jane and John's native language. The

Department filled out and made an application for a family reunification visa to allow Jane and John to immigrate to the United States. After a year and a half, the application was still listed as "pending." The Department was informed that, because of the June 4, 2025, travel ban put in place by the United States federal government, all individuals from Afghanistan are no longer eligible for visas.[1] The Department also considered Jane and John's request that the child be returned to them, but the United States government has a "do not travel" advisory in effect for United States citizens regarding Afghanistan, and thus it would be unsafe for a Department social worker to escort the child back to Afghanistan. John also shared with the Department that he has been persecuted simply because it was known that he had a child living in the United States. Jane and John expressed a desire for the child to be returned to his aunt and uncle, which the Department denied.

During this time, the Department arranged video visits for the child with Jane, John, and a translator, but those visits were ultimately suspended due to concerns that the visits were negatively impacting the child's mental health. Jane and John have not had contact with the child since April 2024. In December 2024, the Department filed a petition for termination of Jane and John's parental rights. A termination trial was held on July 1; July 15; and August 19, 2025, with Jane and John appearing via video with an interpreter. Following the hearing, the magistrate court found by clear and convincing evidence that Jane and John had neglected the child and that termination is in the child's best interests. As a result, the magistrate court terminated Jane and John's parental rights. Jane and John appeal.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.

---

[1] There is one exception for Afghan citizens who assisted the United States government prior to the Taliban's takeover, but this exception does not apply to Jane and John.

*Id.* The substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Jane and John assert that the magistrate court erred in finding that termination of their parental rights is in the best interests of the child. The Department responds that clear and convincing evidence exists that termination is in the best interests of the child. We hold that the magistrate court's best interests finding is supported by substantial and competent evidence.

## A.    Statutory Basis for Termination

The magistrate court terminated Jane and John's parental rights on the basis of neglect. Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month[2] in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

---

[2]    At the time the Department filed the petition to terminate Jane and John's parental rights, the statutory timeframe under I.C. § 16-2002(3)(b) was fifteen out of the most recent twenty-two months. Subsequently, the statute was amended to twelve of the most recent twenty-two months.

The Department alleged one count of neglect against both Jane and John, one count of neglect against Jane, and one count of neglect against John. The magistrate court dismissed the count of neglect alleged against both Jane and John based on impossibility as a defense. The magistrate court found that, while the child had been in the custody of the Department for the previous thirty-three months, Jane and John could not have complied with their case plans because they were in Afghanistan for the entirety of the child protection case. The magistrate court recognized that Jane and John were not permitted to immigrate to the United States. Therefore, despite reunification not occurring by the last day of the fifteenth month that the child was in the Department's custody, the magistrate court found this was not the fault of Jane and John.

Instead, the magistrate court found that the Department had proven that Jane and John neglected the child because the child was "without proper parental care and control, or subsistence, education, medical or other care and control necessary for [his] well-being because of the conduct or omission" of Jane and John. The magistrate court found that Jane resides permanently in another country, is unable to immigrate to the United States to care for the child, and entrusted the child "to unsafe caretakers who abused, starved, and neglected him and despite being informed of these things, requested that he be returned to these same caretakers." The magistrate court found the Department had proven the same to be true regarding John. For these reasons, the magistrate court found there was clear and convincing evidence that Jane and John neglected the child.

Jane and John do not challenge the magistrate court's finding that there is a statutory basis for termination. Because Jane and John do not address the statutory basis for termination of their parental rights, that aspect of the magistrate court's decision is affirmed.

B.     Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe*

*(2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

On appeal, Jane and John argue that the magistrate court's decision terminating their parental rights is not in the best interests of the child. Jane and John contend that the magistrate court failed to consider the nature of the parent-child relationship under Afghan culture and the bond that existed between Jane, John, and the child while the family was still together in Afghanistan. The Department asserts that the magistrate court's decision that termination is in the child's best interests is supported by substantial and competent evidence.

In the decision terminating parental rights, the magistrate court acknowledged "that the depths of tragedy reflected by this unique case is unfathomable." The magistrate court found that it will not be possible for Jane and John to immigrate to the United States during the child's youth. The magistrate court further found that it is not possible, or ethical, to return the child to Afghanistan. Even if it was possible to return the child to Afghanistan, the child would not be provided the medical services he receives in Idaho for his special needs, including treatment for post-traumatic stress disorder, attention deficit hyperactivity disorder, nightmares, night terrors, and hearing loss resulting from the physical abuse he suffered to his head. The child is currently enrolled in play therapy, occupational therapy, behavioral intervention services, medication management, and wrap-around services. Additionally, due to the travel ban, it is not possible for the Department to send an escort with the child to ensure a safe delivery back to Jane and John in Afghanistan. Furthermore, even if Jane and John could come to the United States and complete a case plan, their lack of concern regarding the abuse the child suffered at the hands of his aunt and uncle "deeply troubled" the magistrate court. The magistrate court found that the child had no video contact with Jane and John in fourteen months. Video visits between Jane and John and child were suspended because the visits "became so emotionally damaging" for the child, and the child had "excessive tantrums before and after visits."

Finally, the magistrate court found that, if parental rights were not terminated, the child could not be legally adopted in the United States. The magistrate court stated:

It is certainly not in [the child's] best interest[s] to make him remain in foster care for the next eleven (11) years without certainty or permanency. Long-term foster care would be enormously emotionally damaging to [the child]. To make matters worse, upon his 18th birthday, [the child] would have no legal status in the United States and be at high risk of deportation to whichever country the United States is sending Afghan nationals to in the year 2036. Termination of parental rights affords [the child] two (2) pathways to legal permanent residence in the United States.

Accordingly, the magistrate court determined that it is in the best interests of the child to terminate Jane and John's parental rights. We agree. Jane and John have not shown error in the magistrate court's finding that termination is in the child's best interests.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's findings that Jane and John neglected the child and that terminating their parental rights is in the child's best interests. Jane and John have failed to show error in the magistrate court's decision to terminate their parental rights. Accordingly, the judgments terminating Jane and John Doe's parental rights are affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.